**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DIVISION OF ARKANSAS**
**CENTRAL DIVISION**

IN THE MATTER OF ZARATTA INGRAM,                    NO. 4:26-bk-12614

Debtor

**RESPONSE TO MOTION TO EXTEND AUTOMATIC STAY**
**AND**
**OBJECTION TO EXTENSION OF AUTOMATIC STAY**

Union Bank & Trust Company (herein "UB&T"), and for its response to Motion To Extend Automatic Say and Objection to Extension of Automatic Stay states:

1. That Debtor is indebted to UB&T in the sum of $55,427.07 with interest accruing thereon at a rate of $7.91 per day.

2. That debtors indebtedness to UB&T is secured by first mortgage lien on the following described separate real properties situated in Drew County, Arkansas, to wit:

> Lot 57 of Block 70 of the original town of Monticello, Arkansas; and

> A parcel of land located in the East Half of the Southeast Quarter (E½ of SE¼) of Section 30 and in the West Half of the Southwest Quarter (W½ of SW¼) of Section 29, all being located in Township 12 South, Range 6 West, Drew County, Arkansas, bounded by a line more particularly described as follows: Commencing at the Southeast corner of the E½ of the SE¼ of said Section 30; thence run North 00°21'36" West along the East boundary of said E½ of SE¼ for a distance of 1082.40 feet to the Southeast corner of that parcel of land conveyed to Harold R. and Carolynn J. McManus as described at page 203 of Deed Book 454; thence run South 88°08'13" West along the South boundary of said McManus parcel for a

distance of 297.00 feet to the Southwest corner thereof; thence run North 00°32'30" West along the West boundary of said McManus parcel for a distance of 418.41 feet to the Southwest corner of that parcel of land conveyed to Carolynn Vest McManus as described at page 518 of Deed Book 259 as being monumented by a ¾" iron pin; thence run North 00°20'23" West along the West boundary of said McManus parcel for a distance of 578.29 feet to the South right of way boundary of U.S. Hwy 278; thence run North 82°49,34" East along said South highway boundary for a distance of 211.98 feet to the Northeast corner of that parcel conveyed to Harold and Carolyn McManus as described as Deed Record Number 57781 of 2006; thence run South 00°19'46" East along the East boundary of said Deed Record number and along the Bast boundary of said parcel described at page 518 of Deed Book 259 for a distance of 396.81 feet to the Southwest corner of that parcel of land conveyed to Roberta Simmons by Deed described as Record Number 7084 of 2010; thence run North 82°49'34" East (parallel with the South boundary of Arkansas State Highway No. 278) for a distance of 87.78 feet to the East boundary of said E½ of SE¼; thence run North 00°21'36" West along the East boundary of the E½ of SE¼ of said Section 30 and the West boundary of the W½ of SW¼ of said Section 29 for a distance of 3 8.44 feet to the Southwest corner of that parcel of land conveyed to Herbert and Gina M. Handley as described as Record Number 46089 of Deed Book 2002 thence run North 82°57'22" East along the South boundary of said Handley parcel for a distance of 5.42 feet to the center line of Huckleberry Lane, a public road therefound; thence run Southerly along the center line of said road for the following courses and distances: South 01°02'31" East a distance of 90.78 feet; South 01°00'48" East a distance of 552.63 feet; South 03°04'25" West a distance of 23.11 feet; thence, leaving said road center line, run South 88°08'13" West for a distance of 11.38 feet to the point of beginning, containing 6.256 acres of land, more or less.

The property is located in DREW County at S29/30, T12S, R6W, MONTICELLO, Arkansas 71655.

3. That UB&T's mortgage lien exists pursuant to that certain mortgage from debtor dated March 1st, 2021 filed of record on March 11th, 2021, as instrument number 102516 in the Drew County Real Estate records. A true and correct copy of said mortgage is attached hereto as Exhibit 1.

4. That debtor filed a Chapter 13 bankruptcy with this Court on January 2nd, 2025 as case number 4:25-bk-1004. (Case Number 1).

5. That case number 1 was dismissed on September 5th, 2025 for failure to make required payments. The Order dismissing case number 1 is attached hereto as Exhibit 2.

6. That the debtor promptly filed another Chapter 13 proceeding in this Court on December 9th, 2025 as case number 4:25-bk-14294. (Case Number 2). This case was also dismissed for failure to make required payments. A copy of the Order dismissing case number 2 is attached hereto as Exhibit 3.

7. That Debtor has filed a third Chapter 13 proceeding within the past year, that being the current proceeding. (Case number 3).

8. That Debtor's last payment to UB&T occurred on November 21st, 2024.

9. That case number 4:25-bk-14294 was dismissed on June 8th, 2026. UB&T denies that there is a material change in circumstance that would justify the extension of the automatic stay provision herein.

10. That on or about June 16th, 2026 UB&T begin a foreclosure action against debtor in the above described real property in Drew County Circuit Court as case number 22CV-26-179. Debtor was served with service of process on June 17th, 2026.

Wherefore, UB&T prays that Debtor's *Motion to Extend the Automatic Stay* provision of the United States Bankruptcy Court be denied; and for all further and lawful relief to which it is entitled, it will forever pray.

Whit Barton (79010)
wbarton@bartonandroper.com
Barton & Roper, PLLC
P.O. Box 507
Monticello, AR 71657
(870) 367-6288
*Attorneys for Union Bank & Trust Company*

## CERTIFICATE OF SERVICE

I, Whit Barton, do hereby certify that a copy of the foregoing *Objection to Confirmation* has been served on this the 6ᵗʰ day of July, 2026 to the following via the listed method:

Frank Falkner
frank@dilkslawfirm.com
*Attorney for Debtor*
*Via CM/ECF*

Mark T. McCarty
ecfmail@ch13ark.com
*Chapter 13 Trustee*
*Via CM/ECF*

Whit Barton (79010)
wbarton@bartonandroper.com
Barton & Roper, PLLC
P.O. Box 507
Monticello, AR 71657
(870) 367-6288
*Attorneys for Union Bank & Trust Company*

Filed For Record
Drew County, AR
Beverly Burks, Circuit Clerk
By _____

MAR 1 1 2021

AM 1/2/3/4/5/6/7/8/9/10/11/12 PM

**Return To:** Union Bank & Trust Co.
PO Box 270
Monticello, AR 71655

**Prepared By:** Union Bank & Trust
Co.
PO Box 270
Monticello, AR 71655

102516                86017821
                      UBH MA

# Mortgage

The date of this Mortgage (*"Security Instrument"*) is March 1, 2021.

| **Mortgagor (Grantor)** | **Lender (Grantee)** |
|---|---|
| ZARATTA INGRAM | Union Bank & Trust Company |
| An unmarried individual | Organized and existing under the laws of the state |
| As a Tenant in Common | of Arkansas |
| 135 CARPENTER RD | 102 W McCloy St |
| MONTICELLO, AR 71655 | Monticello, AR 71655 |

**1. Conveyance.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender the following described property:

Section 26, Township 12 South, Range 7 West, being Lot 57 of Block 270, Monticello Original Subdivision, being more commonly known as 1156 E. Railroad St., Monticello, Arkansas.

The property is located in DREW County at S36,T12S,R7W, MONTICELLO, Arkansas 71655.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as *"Property"*).

**2. Maximum Obligation Limit.** The total principal amount secured by this Security Instrument at any one time shall not exceed $56,611.97. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not

EXHIBIT

1

apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**3. Secured Debt and Future Advances.** The term *"Secured Debt"* is defined as follows:

    (A)Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions.

    The promissory note signed by ZARATTA INGRAM (the *"Borrower"*) and dated the same date as this Security Instrument (the *"Note"*). The Note states that Borrower owes Lender Fifty six thousand six hundred-eleven and 97/100 Dollars (U.S. $56,611.97) plus interest. Borrower has promised to pay this debt in regular periodic payments and to pay the debt in full not later than May 15, 2026.

    (B)All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

    (C)All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

    (D)All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

This Security Instrument will not secure any other debt if Lender fails, with respect to that other debt, to fulfill any necessary requirements or to conform to any limitations of Regulation Z and X that are required for loans secured by the Property.

**4. Payments.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**5. Warranty of Title.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

    (A)To make all payments when due and to perform or comply with all covenants.

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
20.3.0.3397-J20210112N
12/2020
Page 2 of 8

(B) To promptly deliver to Lender any notices that Mortgagor receives from the holder.

(C) Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. Due on Sale.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**9. Warranties and Representations.** Mortgagor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

**10. Property Condition, Alterations and Inspection.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor or any other owner made under any law or regulation regarding the use, ownership and occupancy of the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**11. Authority to Perform.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. Assignment of Leases and Rents.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (all included in *"Property"*): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as *"Leases"*); and rents, issues and profits (all referred to as *"Rents"*). In the event any item listed as Leases or Rents is determined to be personal property, this

assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default.

Upon default, Mortgagor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Security Instrument. As long as this Security Instrument is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

**13. Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**14. Default.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

**15. Remedies on Default.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. Expenses; Advances on Covenants; Attorneys' Fees; Collection Costs.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the same interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees (as

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

20.3.0.3397-J20210112N

12/2020
Page 4 of 8

determined under A.C.A. 16-22-308), court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

**17. Environmental Laws and Hazardous Substances.** As used in this section, (1) *"Environmental Law"* means, without limitation, the *Comprehensive Environmental Response, Compensation and Liability Act* (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) *"Hazardous Substance"* means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," or "hazardous substance," under any Environmental Law.

Mortgagor represents, warrants and agrees that:
   (A) Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
   (B) Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.
   (C) Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.
   (D) Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. Condemnation.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. Insurance.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

20.3.0.3397-J20210112N

12/2020
Page 6 of 8

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause". Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**20. Escrow for Taxes and Insurance.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. Financial Reports and Additional Documents.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

**22. Joint and Individual Liability; Co-Signers; Successors and Assigns Bound.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

**23. Applicable Law; Severability; Interpretation.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**24. Notice.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address in this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

20.3.0.3397-J20210112N

12/2020
Page 6 of 8

**25. Waivers.** Except to the extent prohibited by law, Mortgagor waives all rights relating to appraisement, sale, redemption and homestead under the laws of the State of Arkansas, especially under 18-49-106. To the extent applicable, Mortgagor relinquishes all rights of curtesy and dower in the Property.

**26. ☐ Construction Loan.** This Security Instrument secures a construction loan. Mortgagor agrees that Lender is not trustee for the benefit of the contractor, subcontractor or materialmen and that such contractor, subcontractor or materialmen do not have equitable liens on the loan proceeds and that they do not have third-party beneficiary status to any of the loan proceeds. Lender is obligated to make the construction advances. Except as indicated in the Description of Non-Construction Advances subsection, the construction advances shall be applied by Mortgagor to the payment of interest, fees, expenses and labor and material costs incurred in the construction of the improvements, and/or remodeling and repairs of the existing improvements, located on the Property. Notice is hereby given that to the full extent permitted under *Ark. Stat. Ann.* § 18-44-110, the lien of this Security Instrument will have priority over any statutory liens on account of labor and materials supplied for construction.

**Description of Non-Construction Advances.** _____

**27. Other Terms.** If checked, the following are applicable to this Security Instrument:

    ☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the *Uniform Commercial Code*.

    ☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]

    ☐ Condominium Rider ☐ Planned Unit Development Rider ☐ Other: _____

    ☐ **Additional Terms.** _____

## Signatures

By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated in this Security Instrument.

**Mortgagor**

_____    3/1/8-1
ZARATTA INGRAM               Date

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

## Acknowledgment

State of Arkansas

County of _Drew_

On this __1__ day of _March_____, before me, _Patricia Romero_ a Notary Public, (or before any officer within this State or without the State now qualified under existing law to take acknowledgments), appeared the within named ZARATTA INGRAM, to me personally well known (or satisfactorily proven to be such person), who stated and acknowledged that he/she/they had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.

In testimony whereof, I have hereunto set my hand and official seal this __1__ day of _March_____

_Patricia Romero_
_____
Notary Public

_Patricia Romero_
_____
(Print Name)

My commission expires: _10|15|2024_

```
PATRICIA ROMERO
NOTARY PUBLIC-STATE OF ARKANSAS
DREW COUNTY
My Commission Expires 10-15-2024
Commission # 12401199
```

Return To: Union Bank & Trust Co.
PO Box 270
Monticello, AR 71655

Prepared By: Union Bank & Trust
Co.
PO Box 270
Monticello, AR 71655

# Mortgage

The date of this Mortgage (*"Security Instrument"*) is March 1, 2021.

| Mortgagor (Grantor) | Lender (Grantee) |
|---|---|
| ZARATTA INGRAM | Union Bank & Trust Company |
| An unmarried individual | Organized and existing under the laws of the state |
| As a Tenant in Common | of Arkansas |
| 135 CARPENTER RD | 102 W McCloy St |
| MONTICELLO, AR 71655 | Monticello, AR 71655 |

**1. Conveyance.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, conveys and mortgages to Lender the following described property:

A parcel of land located in the East Half of the Southeast Quarter (E½ of SE¼) of Section 30 and in the West Half of the Southwest Quarter (W½ of SW¼) of Section 29, all being located in Township 12 South, Range 6 West, Drew County, Arkansas, bounded by a line more particularly described as follows: Commencing at the Southeast corner of the E½ of the SE¼ of said Section 30; thence run North 00°21'36" West along the East boundary of said E½ of SE¼ for a distance of 1082.40 feet to the Southeast corner of that parcel of land conveyed to Harold R. and Carolynn J. McManus as described at page 203 of Deed Book 454; thence run South 88°08'13" West along the South boundary of said McManus parcel for a distance of 297.00 feet to the Southwest corner thereof; thence run North 00°32'30" West along the West boundary of said McManus parcel for a distance of 418.41 feet to the Southwest corner of that parcel of land conveyed to Carolynn Vest McManus as described at page 518 of Deed Book 259 as being monumented by a ¼" iron pin; thence run North 00°20'23" West along the West boundary of said McManus parcel for a distance of 578.29 feet to the South right of way boundary of U.S. Hwy 278; thence run North 82°49'34" East along said South highway boundary

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

for a distance of 211.98 feet to the Northeast corner of that parcel conveyed to Harold and Carolyn McManus as described as Deed Record Number 57781 of 2006; thence run South 00°19'46" East along the East boundary of said Deed Record number and along the East boundary of said parcel described at page 518 of Deed Book 259 for a distance of 396.81 feet to the Southwest corner of that parcel of land conveyed to Roberta Simmons by Deed described as Record Number 7084 of 2010; thence run North 82°49'34" East (parallel with the South boundary of Arkansas State Highway No. 278) for a distance of 87.78 feet to the East boundary of said E½ of SE¼; thence run North 00°21'36" West along the East boundary of the E½ of SE¼ of said Section 30 and the West boundary of the W½ of SW¼ of said Section 29 for a distance of 38.44 feet to the Southwest corner of that parcel of land conveyed to Herbert and Gina M. Handley as described as Record Number 46089 of Deed Book 2002 thence run North 82°57'22" East along the South boundary of said Handley parcel for a distance of 5.42 feet to the center line of Huckleberry Lane, a public road therefound; thence run Southerly along the center line of said road for the following courses and distances: South 01°02'31" East a distance of 90.78 feet; South 01°00'48" East a distance of 552.63 feet; South 03°04'25" West a distance of 23.11 feet; thence, leaving said road center line, run South 88°08'13" West for a distance of 11.38 feet to the point of beginning, containing 6.256 acres of land, more or less.

The property is located in DREW County at S29/30, T12S, R6W, MONTICELLO, Arkansas 71655.

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as *"Property"*).

**2. Maximum Obligation Limit.** The total principal amount secured by this Security Instrument at any one time shall not exceed $56,611.97. This limitation of amount does not include interest and other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the covenants contained in this Security Instrument.

**3. Secured Debt and Future Advances.** The term *"Secured Debt"* is defined as follows:

(A) Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions.

The promissory note signed by ZARATTA INGRAM (the *"Borrower"*) and dated the same date as this Security Instrument (the *"Note"*). The Note states that Borrower owes Lender Fifty six thousand six hundred-eleven and 97/100 Dollars (U.S. $56,611.97) plus interest. Borrower has promised to pay this debt in regular periodic payments and to pay the debt in full not later than May 15, 2026.

(B) All future advances from Lender to Mortgagor or other future obligations of Mortgagor to Lender under any promissory note, contract, guaranty, or other evidence of debt executed by Mortgagor in favor of Lender after this Security Instrument whether or not this Security Instrument is specifically referenced. If more than one person signs this Security Instrument, each Mortgagor agrees that this Security Instrument will secure all future advances and future obligations that are given to or incurred by any one or more Mortgagor, or any one or more Mortgagor and others. All future advances and other future obligations are secured by this Security Instrument even though all or part may not yet be advanced. All future advances and other future obligations are secured as if made on the date of this Security Instrument. Nothing

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
20.3.0.3397-J20210112N
12/2020
Page 2 of 9

in this Security Instrument shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment must be agreed to in a separate writing.

(C)All obligations Mortgagor owes to Lender, which may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Mortgagor and Lender.

(D)All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of rescission.

This Security Instrument will not secure any other debt if Lender fails, with respect to that other debt, to fulfill any necessary requirements or to conform to any limitations of Regulation Z and X that are required for loans secured by the Property.

**4. Payments.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**5. Warranty of Title.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell, and mortgage the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

**6. Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees:

(A)To make all payments when due and to perform or comply with all covenants.

(B)To promptly deliver to Lender any notices that Mortgagor receives from the holder.

(C)Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

**7. Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**8. Due on Sale.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable.

**9. Warranties and Representations.** Mortgagor has the right and authority to enter into this Security Instrument. The execution and delivery of this Security Instrument will not violate any agreement governing Mortgagor or to which Mortgagor is a party.

**10. Property Condition, Alterations and Inspection.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

20.3.0.3397-J20210112N

12/2020
Page 3 of 9

waste, impairment, or deterioration of the Property. Mortgagor will keep the Property free of noxious weeds and grasses. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor or any other owner made under any law or regulation regarding the use, ownership and occupancy of the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**11. Authority to Perform.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

**12. Assignment of Leases and Rents.** Mortgagor assigns, grants, bargains, conveys and mortgages to Lender as additional security all the right, title and interest in the following (all included in *"Property"*): existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including any extensions, renewals, modifications or replacements (all referred to as *"Leases"*); and rents, issues and profits (all referred to as *"Rents"*). In the event any item listed as Leases or Rents is determined to be personal property, this assignment will also be regarded as a security agreement. Mortgagor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Mortgagor may collect, receive, enjoy and use the Rents so long as Mortgagor is not in default.

Upon default, Mortgagor will receive any Rents in trust for Lender and will not commingle the Rents with any other funds. Mortgagor agrees that this Security Instrument is immediately effective between Mortgagor and Lender and effective as to third parties on the recording of this Security Instrument. As long as this Security Instrument is in effect, Mortgagor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants.

**13. Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**14. Default.** Mortgagor will be in default if any party obligated on the Secured Debt fails to make payment when due. Mortgagor will be in default if a breach occurs under the terms of this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt. A good faith belief by Lender that Lender at any time is insecure with respect to any

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

20.3.0.3397-J20210112N

person or entity obligated on the Secured Debt or that the prospect of any payment or the value of the Property is impaired shall also constitute an event of default.

**15. Remedies on Default.** In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents. All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**16. Expenses; Advances on Covenants; Attorneys' Fees; Collection Costs.** Except when prohibited by law, Mortgagor agrees to pay all of Lender's expenses if Mortgagor breaches any covenant in this Security Instrument. Mortgagor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the same interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees (as determined under A.C.A. 16-22-308), court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

**17. Environmental Laws and Hazardous Substances.** As used in this section, (1) *"Environmental Law"* means, without limitation, the *Comprehensive Environmental Response, Compensation and Liability Act* (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) *"Hazardous Substance"* means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," or "hazardous substance," under any Environmental Law.

Mortgagor represents, warrants and agrees that:
- (A) Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.
- (B) Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

20.3.0.3397-J20210112N

12/2020
Page 5 of 9

(C) Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

(D) Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

**18. Condemnation.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

**19. Insurance.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause". Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**20. Escrow for Taxes and Insurance.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

**21. Financial Reports and Additional Documents.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.
20.3.0.3397-J20210112N
12/2020
Page 6 of 9

**22. Joint and Individual Liability; Co-Signers; Successors and Assigns Bound.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

**23. Applicable Law; Severability; Interpretation.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**24. Notice.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address in this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

**25. Waivers.** Except to the extent prohibited by law, Mortgagor waives all rights relating to appraisement, sale, redemption and homestead under the laws of the State of Arkansas, especially under 18-49-106. To the extent applicable, Mortgagor relinquishes all rights of curtesy and dower in the Property.

**26. ☐ Construction Loan.** This Security Instrument secures a construction loan. Mortgagor agrees that Lender is not trustee for the benefit of the contractor, subcontractor or materialmen and that such contractor, subcontractor or materialmen do not have equitable liens on the loan proceeds and that they do not have third-party beneficiary status to any of the loan proceeds. Lender is obligated to make the construction advances. Except as indicated in the Description of Non-Construction Advances subsection, the construction advances shall be applied by Mortgagor to the payment of interest, fees, expenses and labor and material costs incurred in the construction of the improvements, and/or remodeling and repairs of the existing improvements, located on the Property. Notice is hereby given that to the full extent permitted under *Ark. Stat. Ann.* § 18-44-110, the lien of this Security Instrument will have priority over any statutory liens on account of labor and materials supplied for construction.

Description of Non-Construction Advances. _____

**27. Other Terms.** If checked, the following are applicable to this Security Instrument:

    ☐ **Fixture Filing.** Mortgagor grants to Lender a security interest in all goods that Mortgagor owns now or in the future and that are or will become fixtures related to the Property. This Security Instrument suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the *Uniform Commercial Code.*

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

20.3.0.3397-J20210112N

12/2020
Page 7 of 9

☐ **Riders.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument. [Check all applicable boxes]
☐ Condominium Rider ☐ Planned Unit Development Rider ☐ Other: _____

☐ **Additional Terms.** _____

## Signatures

By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated in this Security Instrument.

**Mortgagor**

ZARATTA INGRAM                                                3/11/21
                                                               Date

**Acknowledgment**

State of Arkansas
County of _____Drew_____
On this ___1___ day of ___March___, before me, ___Patricia Romero___ Notary Public, (or before any officer within this State or without the State now qualified under existing law to take acknowledgments), appeared the within named ZARATTA INGRAM, to me personally well known (or satisfactorily proven to be such person), who stated and acknowledged that he/she/they had so signed, executed and delivered said foregoing instrument for the consideration, uses and purposes therein mentioned and set forth.

In testimony whereof, I have hereunto set my hand and official seal this ___1___ day of ___March___.

_Patricia Romero_
*Notary Public*

_Patricia Romero_
*(Print Name)*

My commission expires: ___10/15/2024___

PATRICIA ROMERO
NOTARY PUBLIC-STATE OF ARKANSAS
DREW COUNTY
My Commission Expires 10-15-2024
Commission # 12401199

Mortgage Closed End-AR
© 2020 Wolters Kluwer Financial Services, Inc.
All rights reserved.

20.3.0.3397-J20210112N

12/2020
Page 8 of 9

State of Arkansas
County of Drew

I hereby certify that this instrument was
filed for record and recorded as follows:
DATE 3-11-21    TIME 3:35

INSTRUMENT# - 112516
Beverly Burks, Recorder of Drew County
By _____

*[This page immediately follows the appropriate acknowledgments and recording information.*
*This page was intentionally left <u>blank</u> to conform to the local "last-page" recording requirements.]*

*[End of Document]*

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

IN RE:    Zaratta Ingram

CASE NO:    4:25-bk-10004 T

Chapter 13

## CHAPTER 13 ORDER DISMISSING CASE
## FOR VIOLATING STRICT COMPLIANCE ORDER

COMES NOW THE COURT and finds that an order was entered in the above styled case on 06/18/2025, Docket Entry [80], requiring the Debtor to make specific payments to the Trustee. The order further provided that the case was to be dismissed if the payments were not submitted as required. The court finds that the payments have not been submitted as required and, therefore, the case should be, and hereby is, dismissed for failure of the Debtor to comply with the court's order of 06/18/2025.

IT IS SO ORDERED.

Date: 09/05/2025

_/s/  Richard D. Taylor_

Richard D. Taylor
U.S. Bankruptcy Judge

cc:  Mark T. McCarty, Trustee

Vanessa Cash Adams
Law Office Of Vanessa Cash Adams Inc
P O Box 250056
Little Rock, AR  72225

Zaratta Ingram
324 E Bird Ave
Wilmar, AR  71675

All Creditors

EXHIBIT

2

IN THE UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

IN RE:  Zaratta Ingram

CASE NO:  4:25-bk-14294 T

Chapter 13

## CHAPTER 13 ORDER DISMISSING CASE
## FOR VIOLATING STRICT COMPLIANCE ORDER

COMES NOW THE COURT and finds that an order was entered in the above styled case on 03/30/2026, Docket Entry [43], requiring the Debtor to make specific payments to the Trustee. The order further provided that the case was to be dismissed if the payments were not submitted as required. The court finds that the payments have not been submitted as required and, therefore, the case should be, and hereby is, dismissed for failure of the Debtor to comply with the court's order of 03/30/2026.

IT IS SO ORDERED.

Date: 06/08/2026

/s/  Richard D. Taylor

Richard D. Taylor
U.S. Bankruptcy Judge

cc:  Mark T. McCarty, Trustee

Vanessa Cash Adams
Law Office Of Vanessa Cash Adams Inc
P O Box 250056
Little Rock, AR  72225

Zaratta Ingram
324 E Bird Ave
Wilmar, AR  71675

All Creditors

EXHIBIT
3